# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH KORTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV1597ERW/MLM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael J. Astrue ("Defendant") denying the application for Supplemental Security Income Benefits

("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., filed by Plaintiff

Joseph Korte ("Plaintiff"). Plaintiff has filed a Brief in Support of the Complaint. Doc. 18. Defendant

has filed a Brief in Support of the Answer. Doc. 21. This matter was referred to the undersigned

United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Doc. 5.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits May 4, 2005, alleging that he became

disabled on December 1, 1998, due to memory loss, back pain, nervousness, attention deficit

hyperactivity disorder ("ADHD"), and depression. Tr. 73-75. The claim was denied on September

7, 2005. Tr. 65-69. Plaintiff requested a hearing, which was held on August 22, 2006, before an

Administrative Law Judge ("ALJ"). Tr. 25-48, 64. On February 16, 2007, the ALJ issued a decision

finding that Plaintiff was not under a disability at any time through the date of the decision. Tr. 15-24.

On April 17, 2007, the Appeals Council denied Plaintiff's request for review. Tr. 8-10. On November

8, 2007, the Appeals Council granted Plaintiff's request for an extension of time to file a Complaint in the United States District Court. Tr. 2-4. Plaintiff filed a Complaint in the United States District Court for the Eastern District of Missouri and the court reversed and remanded the matter on February 23, 2009. Tr. 205-20. See Case No. 4:07CV2018AGF, Docs. 1, 21. The Appeals Council then remanded the matter to the ALJ. Tr. 202-204. A hearing was held on July 8, 2009, before a different ALJ. Tr. 324-42. The ALJ issued a decision on August 4, 2009. Tr. 188-201. The Appeals Council denied Plaintiff's Request for Review. Tr. 188-90. Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## MEDICAL RECORDS[1]

The District Court, in its Memorandum and Opinion, dated February 2009, summarized Plaintiff's medical records as follows:

Significantly, with respect to Plaintiff's mental impairments, the record suggests that Plaintiff was developmentally delayed in early childhood, and that at the age of nine, he exhibited ADHD symptoms and was put on Dexedrine for a short while, which did not help him. He completed the 11th grade in special education classes at numerous different schools. In January 1991, at the age of 23, Plaintiff was seen at a neurobehavioral clinic by Steven Rose, M.D., who diagnosed Plaintiff with borderline intelligence. Plaintiff's full scale IQ score was assessed as 79 (borderline intellectual functioning). Id. at 166-70.[2]

On July 11, 2005, state consultant Thomas J. Spencer, Psy.D., conducted a psychological evaluation of Plaintiff in connection with Plaintiff's application for disability benefits. The record indicates that Dr. Spencer had for review Dr. Rose's 1981 evaluation. Plaintiff reported to Dr. Spencer that he had been unable to hold down a job because he could not remember procedures and instructions. Dr. Spencer noted that based on Plaintiff's vocabulary, grammar, and fund of knowledge, he

---

[1]     Plaintiff has adopted the court's prior findings regarding the facts.

[2]     Borderline intellectual functioning is characterized by an IQ score of 71-84. Diagnostic & Statistical Manual of Mental Disorders (4th Ed.1994) ("DSM-IV") at 684.

appeared to function in the borderline range of intellectual ability. Dr. Spencer diagnosed a Global Assessment of Functioning score of 50-55,[3] but stated that he had "some reservations" about the results of memory testing because of the way Plaintiff answered some of the questions. Dr. Spencer also questioned the extent of Plaintiff's reported inattention and lack of concentration because Plaintiff had managed to drive from Washington, Missouri, to Dr. Spencer's office in Rolla, Missouri (approximately 75 miles away) and find the office's new location after first going to the old office and getting the new address left on the door. Dr. Spencer recommended further testing for a more definitive diagnosis. Id. at 176-81.

On August 23, 2005, Dr. Spencer administered a Test of Memory Malingering ("TOMM") and re-administered the WAIS-III, which showed a full-scale IQ of 66. The results of the TOMM were consistent with malingering memory impairment, and accordingly Dr. Spencer was not comfortable finding that the WAIS-III result was accurate. Dr. Spencer opined that Plaintiff was "at the very least exaggerating the severity of his impairment," noting that Plaintiff was able to find Dr. Spencer's office without difficulty several weeks after his last appointment. Id. at 171-74.

On September 5, 2006, at Plaintiff's request, Licenced Professional Counselor Larry Cloninger interviewed and evaluated Plaintiff in connection with his application for disability benefits. Testing showed that simple calculations were mostly inaccurate, immediate memory was partially impaired and remote memory was moderately impaired, general knowledge was mostly inaccurate, and intelligence was low. Mr. Cloninger also stated that his findings confirmed earlier findings of chronic depression. Mr. Cloninger stated that he saw no indications of malingering. Id. at 158-65.

Reporting on a consultative orthopedic examination of Plaintiff on September 27, 2006, Arthur Greenberg, M.D., noted that Plaintiff's intellectual functioning seemed normal, that his recent and remote memory for medical events was good, and that he seemed anxious. Id. at 147-48.

Case No. 4:07CV2018AGF, Doc. 20 at 2-4.

---

[3]     Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.

Further medical records reflect that Plaintiff was seen on April 6, 2007, at Health Net Regional Center, and that the impression on this date was depression, anxiety, pharyngitis, and gastritis. Tr. 269.

On June 7, 2007, David Giem, M.D., reported that Plaintiff had a mood disorder and that he had a GAF of 60. Tr. 275. Dr. Giem reported on July 5, 2007, that Plaintiff denied feeling depressed; that Plaintiff had some irritability and anger; and that this irritability and anger was less than Plaintiff previously reported. Tr. 276. Records further reflect that Plaintiff was seen by Dr. Giem once in August, September, October, November, and December 2007, and once in January, May, November, February, April 2009. Tr. 278-317.

Maria Domanska, Ph.D., completed a Mental Residual Functional Capacity questionnaire on June 17, 2009, in which she reported that Plaintiff had been under her care since June 2007; that Plaintiff said that his symptoms were the same as they were when he was a teenager; that Plaintiff did not have a low IQ or reduced intellectual functioning; that Plaintiff's psychological condition did not exacerbate Plaintiff's physical symptoms; and that Dr. Domanska's diagnosis was bipolar disorder. She also reported that Plaintiff was unable to meet competitive standards in sustaining an ordinary routine without special supervision, to work in coordination with or proximity to others without being unduly distracted, to complete a normal workday and workweek without interruptions from psychologically-based symptoms, or to accept instructions and respond appropriately to criticism from supervisors. Dr. Domanska further reported that Plaintiff was seriously limited, but not precluded from, remembering work-like procedures, maintaining attention for two-hour segments, maintaining regular attendance, responding appropriately to changes in a routine work setting, dealing with normal work stress, understanding, remembering and carrying out detailed instructions, and setting realistic goals or making plans independently of others. Dr. Domanska also reported that

Plaintiff's ability was unlimited or very good in regard to understanding ,remembering, and carrying out very short and simple instructions, asking simple questions, and adhering to basic standards of neatness and cleanliness. Dr. Domanska reported that Plaintiff's ability was limited, but satisfactory, in regard to making simple work-related decisions, performing at a consistent pace without an unreasonable number and length of rest periods, getting along with co-workers without unduly distracting them or exhibiting behavioral extremes, being aware of normal hazards and taking appropriate precautions, dealing with stress of semiskilled and skilled work, interacting appropriately with the general public, maintaining socially appropriate behavior, traveling in unfamiliar places, and using public transportation. Tr. 319-23.

## II.
## STANDARD OF REVIEW

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" <u>Goff v. Barnhart</u>, 421 F.3d 785, 790 (8th Cir. 2005) (quoting <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." <u>Id.</u> "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." <u>Page v. Astrue</u>, 484 F.3d 1040, 1043 (8th Cir.

2007) (quoting <u>Caviness v. Massanari</u>, 250 F.3d 603, 605 (8th Cir. 2001) (citing <u>Nguyen v. Chater</u>, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. <u>Id.</u>

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). <u>Steed v. Astrue</u>, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); <u>Eichelberger</u>, 390 F.3d at 590-91; <u>Masterson v. Barnhart</u>, 363 F.3d 731, 737 (8th Cir. 2004); <u>Young v. Apfel</u>, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. <u>Steed</u>, 524 F.3d at 874 n.3; <u>Young</u>, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." <u>Id.</u> <u>See also</u> <u>Harris v. Barnhart</u>, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); <u>Stormo v. Barnhart</u>, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to

prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir.

2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains

inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly

included only those limitations supported by the record as a whole in the hypothetical."); <u>Rautio</u>, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. <u>Baker v. Barnhart</u>, 457 F.3d 882, 894-95 (8th Cir. 2006); <u>Carlock v. Sullivan</u>, 902 F.2d 1341, 1343 (8th Cir. 1990); <u>Hutsell</u>, 892 F.2d at 750.

## VI.
## DISCUSSION

The ALJ in Case No. 4:07CV2018 found that the combination of Plaintiff's impairments resulted in the RFC to perform light work, as defined by the Regulations.[4] As such, the ALJ found that Plaintiff could frequently lift ten pounds and occasionally lift up to twenty pounds, and that he could walk, stand, and sit during an eight hour workday without significant limitations. The ALJ found that Plaintiff could not perform complex and detailed work tasks, and that this limitation did not "significantly compromise" Plaintiff's ability to perform the full range of light work.

In Case No. 4:07CV2018AGF, the issues raised by Plaintiff involved his alleged mental impairments. Plaintiff argued that the ALJ's conclusion that the only limitation Plaintiff's impairments imposed upon his ability to work was that he could not do complex and detailed work was not supported by the record. Plaintiff further argued that his mental impairments precluded the ALJ's reliance upon the Guidelines in determining whether he was disabled, and that the ALJ was required to obtain and consider the testimony of a VE. The District Court found that the record was "devoid of substantial evidence as to the level of Plaintiff's mental impairments and their affect on his

---

[4] The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6 (SSA).

work-related functional abilities." As such, the District Court remanded the matter with instructions that Plaintiff's RFC should be reconsidered. The court noted that the record might need to be further developed in this regard and that the ALJ would probably need to obtain the testimony of a VE to establish whether there are jobs available in the national economy that a person with Plaintiff's RFC can perform.

On remand, the ALJ found that Plaintiff had the RFC for light work, with the restrictions that Plaintiff should avoid climbing ladders, ropes, or scaffolding; that Plaintiff can occasionally stoop and crouch; that Plaintiff should avoid concentrated exposure to industrial hazards and unprotected heights; and that Plaintiff was limited to jobs that involve simple tasks which require no contact with the general public and no more than occasional contact with coworkers. Tr. 195. The ALJ posed a hypothetical to a VE which described a person with the RFC that the ALJ assigned to Plaintiff. The VE testified that there were jobs in the national and local economy which a person with Plaintiff's RFC could perform. As such, the ALJ found that Plaintiff was not disabled.

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022. Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to apply the proper standard when determining Plaintiff's RFC; because the ALJ failed to articulate a legally sufficient rationale as to how positive evidence was viewed; because Dr. Spencer, upon whose report the ALJ relied, did not have relevant evidence before him when he issued his report; because the ALJ did not give proper weight to Dr. Domanska's opinion; because other evidence calls Dr. Spencer's conclusions into

question; because the ALJ failed to develop the evidence and failed to articulate factors required to be considered by the Regulations upon determining Plaintiff's RFC; because the ALJ did not address all the evidence, including Mr. Cloninger's "positive factor"; because the ALJ did not properly consider Plaintiff's physical limitations; and because the VE's response to "a flawed hypothetical question cannot be considered substantial evidence." Doc. 18.

## A.    Plaintiff's Credibility:

Upon making his RFC determination, the ALJ considered Plaintiff's credibility. As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. Guillams V. Barnhart, 393 F.3d 798, 801(8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th

13

Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff had a poor work history. In particular, the ALJ considered that Plaintiff's highest earnings were in 1976, when he earned $500.94 and that since 1988, the Plaintiff's only earnings were $271.97, for the year 1997. The ALJ further considered that Plaintiff never sought vocational rehabilitation services and that he had not made any attempt to work since 1997. Tr. 22. A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). For the same reason, an ALJ may discount a claimant's credibility based upon a poor work record. Ownbey v. Sullivan, 5 F.3d 342, 345 (8th Cir. 1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). As such, the court finds that the ALJ properly considered Plaintiff's work history and that his decision is supported by substantial evidence in this regard.

Second, the ALJ considered that, although Plaintiff alleged he had severe back pain, the record did not reflect that he had treatment for this condition other than his briefly seeing a chiropractor. The ALJ also considered that Plaintiff had never been prescribed prescription pain medication and that Plaintiff had not undergone physical therapy. The court notes that Dr. Greenberg reported on September 27, 2006, that the only medication Plaintiff was taking was Advil. Tr. 147. The ALJ further considered that Plaintiff did not demonstrate that he had ever been refused treatment based on an inability to pay. Where a plaintiff has not been prescribed any potent pain medication, an

ALJ may properly discount the plaintiff's complaints of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents); Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994); Benskin, 830 F.2d at 884 (holding that treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain); Cruse v. Bowen, 867 F.2d 1183, 1187 (8th Cir. 1989) (holding that minimal consumption of pain medication reveals a lack of disabling pain); Rautio, 862 F. 2d at 179 (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). Even assuming that a claimant's financial resources were insufficient, failure to seek treatment offered to indigents detracts from a claim that the claimant did not seek medical treatment because of inadequate financial resources. See Riggins, 177 F.3d at 693. Furthermore, "a claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits." Tome v. Schweiker, 724 F.2d 711, 713-714 (8th Cir. 1984) (citing 20 C.F.R. §§ 404.1518, 404.1530) (holding that ALJ's credibility determination was

against the substantial weight of the evidence where the diabetic plaintiff did not follow her dietary and insulin regimen because she "lacked the financial resources and the discipline and education needed to understand and follow a strict dietary and insulin regimen")). The court finds that the ALJ properly considered the extent of Plaintiff's treatment and that the record in this regard is supported by substantial evidence.

Third, the ALJ considered that no doctor had ever opined that Plaintiff's pain was disabling in severity. The court notes that Dr. Greenberg reported on September 25, 2006, that Plaintiff "appear[ed] stable at station and comfortable in both supine and sitting position"; that examination of Plaintiff's upper extremity joints revealed no pain associated with movement; that Plaintiff's ROM in the upper extremities was normal except for reduced ROM in the shoulders "reportedly due to mid and upper back pain with these maneuvers"; that examination of Plaintiff's lower joints revealed no edema, laxity, or pain associated with movement; that ROM in Plaintiff's lower joints was normal; that, in regard to his cervical spine, Plaintiff's neck ROM was normal; that there was no tenderness of the cervical paravertebral muscles or to percussion of the cervical spinous processes; that range of motion for Plaintiff's waist flexion was normal; that "hip ROM testing cause[d] back pain making reliable assessment of hip ROM untenable"; that testing of cranial nerves showed no deficits; that deep tendon reflexes were normal bilaterally in the upper and lower extremities; that cerebellar function was intact; that Plaintiff's coordination was good; and that Plaintiff was able to partially squat. Tr. 147-49. It is proper for an ALJ to consider that no physician imposed any work-related restrictions on a claimant. See Eichelberger, 390 F.3d at 589. Moreover, a record that does not contain any physician opinion of disability or total inability to work detracts from the claimant's subjective complaints. Reney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005); Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995); Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508

(8th Cir. 1987); Fitzsimmons v. Mathews, 647 F.2d 862, 863 (8th Cir. 1981); Kovach v. Apfel, 119 F. Supp. 2d 943, 967 (E.D. Mo. 2000). As such, the court finds that the ALJ properly considered that no doctor opined that Plaintiff's pain was disabling and that the record, in this regard, is supported by substantial evidence

Fourth, the ALJ considered that Plaintiff's activities, including his obtaining a driver's license and his finding his way to Dr. Spencer's office, were inconsistent with his claim of his having a disabling memory.

Fifth, the court notes that Dr. Domanska reported that medication controlled Plaintiff's anxiety and did not cause side effects. Tr. 198, 274-316. Conditions which can be controlled by treatment are not disabling. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450. Additionally, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994).

In conclusion, the court finds that the ALJ's consideration of Plaintiff's credibility is based on substantial evidence.

**B.      Plaintiff's RFC:**

The ALJ found that Plaintiff had the RFC for light work and that he should avoid climbing ladders, ropes, or scaffolding; that Plaintiff can occasionally stoop and crouch; that Plaintiff should avoid concentrated exposure to industrial hazards and unprotected heights; and that Plaintiff was limited to jobs that involve simple tasks which require no contact with the general public and no more than occasional contact with coworkers. Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to apply the proper standard when determining Plaintiff's RFC; because the ALJ failed to articulate legally sufficient rationale as to how positive evidence was viewed; because Dr. Spencer, upon whose report the ALJ relied, did not have relevant evidence before him when he issued his report; because the ALJ did not give proper weight to Dr. Domanska's opinion; because other evidence calls Dr. Spencer's conclusions into question; and because the ALJ failed to develop the evidence and failed to articulate factors which the Regulations required the ALJ to consider upon determining Plaintiff's RFC.

The Regulations define RFC as "what [the claimant] can still do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual

functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir.2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir.2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5 "[t]he

burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737).

First, upon determining Plaintiff's RFC, the ALJ found that Plaintiff's allegations were not fully credible, as set forth above. See Tucker, 363 F.3d at 783.

Second, upon making his RFC assessment the ALJ identified Plaintiff's functional limitations and restrictions and then assessed his work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). In this regard, although the ALJ found that Plaintiff had the RFC for light work, the ALJ further found that Plaintiff had the limitations described above. The physical restrictions imposed by the ALJ are consistent with the weight, balancing, and climbing restrictions found by Dr. Greenberg, who stated in a Medical Source Statement of Ability to do Work-Related Activities (Physical), dated September 27, 2006, that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; that sitting was not affected by Plaintiff's impairments; that Plaintiff was limited in regard to pushing and pulling with his lower extremities, but not in regard to his upper extremities; that Plaintiff could frequently climb and balance; and that Plaintiff could occasionally kneel, crouch, crawl, and stoop. Tr. 154-55. The

restrictions in regard to Plaintiff's contact with the public and coworkers are consistent with the treatment notes of Dr. Domanska, as well as the report of Dr. Spence and the observations of Dr. Greenberg, as set forth above and below. Only after defining Plaintiff's limitations and restrictions did the ALJ conclude that Plaintiff's restrictions do not preclude him from engaging in light work with the stated restrictions.

Third, the ALJ's assessment of Plaintiff's RFC is based upon and consistent with all of the relevant evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). In particular, the ALJ considered Dr. Spencer's reports from July and August 2005, which stated, among other things, that Plaintiff was alert and oriented; that he had no psychotic symptoms; that his flow of thought was intact; that Plaintiff appeared to operate in the borderline range of intellectual ability; that Plaintiff had good working knowledge of social norms; that Plaintiff arrived early for the appointment, although he had to find Dr. Spencer's new office location based on a note on the door at Dr. Spencer's old office; that Plaintiff's concentration was only mildly impaired; that Plaintiff followed directions without fail; that Dr. Spencer observed nothing out of the ordinary during the examination; that Dr. Spencer could not definitely assess whether Plaintiff was malingering based on the Test of Memory Malingering ("TOMM"); and that Dr. Spencer "certainly" felt that Plaintiff was, "at the very least, exaggerating the severity of his impairment." Tr. 20.

The ALJ considered that Mr. Cloninger reported that he saw no indication that Plaintiff was malingering and that the results of Mr. Cloninger's examination confirmed a diagnosis of chronic depression/dysthymia. The ALJ also considered that Dr. Greenberg saw Plaintiff on September 27,

2006, pursuant to a referral for an orthopedic evaluation ordered by the ALJ, and that Dr. Greenberg reported, among other things, that Plaintiff's intellectual functioning appeared normal during the examination; that his memory was good; that Plaintiff had no sensory or motor deficits; that Plaintiff's coordination was good; that he could partially squat; that he had full grip strength bilaterally; and that Plaintiff could lift ten pounds frequently and twenty pounds occasionally. Tr. 20-21.

Fourth, upon determining Plaintiff's RFC, the ALJ considered the differing opinions of record and determined the proper weight to be given to the opinions of the various sources. "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). In particular, the ALJ considered that while Mr. Cloninger was a licensed counselor, Dr. Spencer was more qualified to evaluate Plaintiff's mental impairments. See Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than the opinion of a source who is not a specialist."). Additionally, the ALJ considered that Dr. Spencer administered tests to Plaintiff and that Dr. Spencer relied both on test results and his own observations when he suggested that Plaintiff was malingering. Indeed, where a doctor offers an opinion based on diagnostic testing, that opinion should be given greater weight than an opinion which is not based on testing. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is giving controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence").

The court also notes that medical evidence of record conflicts with Mr. Cloninger's opinion. For example, although Mr. Cloninger stated that Plaintiff was limited in regard to his self-care, Dr. Domanska, who was a treating doctor, reported that Plaintiff could care for himself. Tr. 161, 304-

305. Additionally, although Mr. Cloninger reported that Plaintiff's ability to understand, remember, and carry out simple instructions was "constantly" limited, Dr. Domanska opined that Plaintiff was not limited in this area. Tr. 163, 320. Not only is Dr. Domanska a licensed medical doctor, but she was Plaintiff's treating doctor. See Estes, 275 F.3d at 725 (holding that generally the opinion of a treating doctor is given greater weight than that of a one time examining source).

Fifth, to the extent the ALJ did not mention every scintilla of evidence, it does not mean that the ALJ did not consider this evidence. See Montgomery v. Chater, 69 F.3d 273,275 (8th Cir. 1995). See also Karlix, 457 F.3d at 746 ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citations omitted); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). Even assuming, arguendo, that the ALJ failed to consider positive evidence from Mr. Cloninger, the court finds that this evidence would not affect the outcome of Plaintiff's case. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). As discussed above and below, the ALJ considered the record as whole and gave proper weight to the opinions of Dr. Spencer and Dr. Domanska, who are both doctors and specialists, as opposed to Mr. Cloninger who is a counselor. In any case, the ultimate issue is whether the decision of the ALJ is supported by substantial evidence. See Karlix, 457 F.3d at 746 ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citing Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003)).

The court finds that the ALJ's conclusion that Plaintiff can engage in light work, with the stated restrictions, is consistent with the medical evidence and the ALJ's finding regarding Plaintiff's

credibility; that the ALJ's determination of Plaintiff's RFC is precise, as it directly addresses his restrictions and the requirements of light work; and that the ALJ's determination of Plaintiff's RFC is based on substantial evidence on the record and is consistent with the Regulations and case law.

## C.     Dr. Domanska's Opinion:

Plaintiff contends that the ALJ should have given controlling weight to Dr. Domanska's opinion as stated in a June 17, 2009 Mental RFC Questionnaire, including her opinion that Plaintiff was unable to meet competitive standards in many areas, such as maintaining a normal routine, working with others without being distracted, completing a normal work week, and accepting instructions and responding appropriately to criticism from supervisors. Indeed, Dr. Domanska opined that Plaintiff was unable to work. Tr. 319-23. For the following reasons, the court finds that the ALJ gave proper weight to Dr. Domanska's opinion.

First, to the extent that the ALJ did not give full credit to Dr. Domanska's opinion as stated in the Mental RFC Questionnaire, the court notes that Dr. Domanska's opinion was not entirely consistent with her treatment notes. In particular, as stated above, Dr. Domanska reported that Plaintiff's anxiety was controlled by medication. She also reported that Plaintiff denied depression; that he was doing well; that his mood was stable; that he was of normal intellect; and that he had a GAF of 60, which indicates only moderate symptoms. Tr. 198, 274-316. Where a treating physician's notes are inconsistent with her opinion as stated in an assessment, controlling weight is not given to the assessment. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006).

Second, the ALJ took into consideration some limitations found by Dr. Domanska and, in some areas, imposed greater restrictions on Plaintiff than those imposed by Dr. Domanska. For example, the RFC assigned to Plaintiff by the ALJ limited Plaintiff to performing simple tasks. Indeed, Dr. Domanska stated that Plaintiff's ability understand, remember, and carry out detailed

instructions was "seriously limited but not precluded" and that his ability to perform jobs which required understanding, remembering, and carrying out very short and simple instructions was "unlimited or very good." Although Dr. Domanska stated that Plaintiff was "limited but satisfactory" in regard to his ability to interact with the general public, the ALJ found that Plaintiff was limited to jobs which require *no* contact with the general public.

Third, to the extent Dr. Domanska opined that Plaintiff was unable to work, a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Moreover, a brief, conclusory statement from a treating physician stating that the applicant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment); Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994) (citing Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir.1991)); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence).

In conclusion, the court finds that the ALJ gave proper weight to Dr. Domanska's opinion and that his decision, in this regard, is supported by substantial evidence.

**D.    Testimony of the Vocational Expert:**

Plaintiff contends that the ALJ posed "a flawed hypothetical" to the VE and that, therefore, the VE's testimony that there are jobs in the economy which Plaintiff can perform is not supported by substantial evidence.  An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible.  Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988).  The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ.  Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobana, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985).  Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision. Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

In the matter under consideration,  the ALJ posed a hypothetical to the VE which included all of Plaintiff's limitations that the ALJ found credible.  The court has found above that the ALJ's RFC determination is supported by substantial evidence.  As such, the court finds that the hypothetical posed to the VE, upon which the ALJ relied, was proper.  The court further finds that the ALJ's determination, based on the VE's response, that there is work in the economy which

Plaintiff can perform is based on substantial evidence. <u>See</u> <u>Gilbert</u>, 175 F.3d at 604; <u>Sobania</u>, 879 F.2d at 445; <u>Rautio</u>, 862 F.2d at 180.

## V.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint be **DENIED**; Docs. 1, 18

**IT IS FURTHER RECOMMENDED** that a separate judgment be entered incorporating this Memorandum Opinion.

The parties are advised that they have fourteen (14 days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of February, 2011.